## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HEATHER ORRIS,** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | 23-62 |
| **v.** | ) | |
| | ) | |
| **COMPASS GROUP USA, INC.,** | ) | |
| **d/b/a CHARTWELLS** | ) | |
| | ) | |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

### I.    PRELIMINARY STATEMENT

By this action, Plaintiff, Heather Orris, seeks wage loss, compensatory and punitive damages, costs, attorneys' fees, pre and post-judgment interest because Compass Group USA, Inc. d/b/a Chartwells discriminated against her due to her gender and created a hostile work environment and constructively discharged her, a violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000. Plaintiff also seeks the same remedies as a result of Defendant's retaliation against her for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964 42 U.S.C. §2000.

### II.    JURISDICTION

1.    This Court has jurisdiction of this matter by virtue of 28 U.S.C. § 1331, in that this is a civil action wherein the matter in controversy arises under the laws of the United States.

2.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b), in that this is a civil action in which jurisdiction is not founded solely on diversity of citizenship, and the acts

constituting a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

3.      On February 14, 2022, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") against the Defendant, alleging gender discrimination and retaliation.  Plaintiff's Charge was dual-filed with the Pennsylvania Human Rights Commission (hereinafter "PHRC").[1]

4.      The EEOC issued a Notice of Right to Sue Letter to Plaintiff on October 19, 2022. This Complaint has been filed within ninety (90) days of the Plaintiff's receipt of the letter, thus making this action timely.

### III.      PARTIES

5.      Plaintiff is Heather Orris (hereinafter "Ms. Orris"), an adult individual who resides in Pittsburgh, Allegheny Co., Pennsylvania.

6.      Defendant Compass Group USA, Inc. d/b/a Chartwells (hereinafter "Chartwells") is a foreign corporation located at 2400 Yorkmont Rd., Charlotte, NC 28217.

7.      Defendant employs 500 plus employees.

8.      At all relevant times, Chartwells is an employer within the definition of Title VII.

9.      At all relevant times, Ms. Orris was an employee of Chartwells within the definition of Title VII.

### IV.      STATEMENT OF CLAIM

10.     In or around July 1, 2020, Chartwells won the contract to manage food service operations at the University of Pittsburgh ("University").

---

[1] Once the administrative requirements have been exhausted, Plaintiff intends to amend this Complaint to include two additional counts under the PHRA.

11.     Prior to July 1, 2020, Ms. Orris worked for Sodexo, the previous food service manager at the University.

12.     On or about July 15, 220, Ms. Orris was hired by Chartwells as an Assistant Director of Dining ("ADDS") for The Eatery. As the ADDS, Ms. Orris was responsible for managing labor at the Eatery, which included staffing requests, scheduling, co-leading food services with the culinarian and other general management responsibilities.

13.     Prior to Ms. Orris' engagement in protected activity, she received generally positive reviews and feedback from her supervisors.

14.     On or about April 30, 2021, Ms. Orris applied for and was promoted to Retail Manager II position at the Cathedral Cafe. As a Retail Manager II, Ms. Orris was tasked with managing labor at the Cathedral Cafe, which included staffing requests, scheduling, and other general management responsibilities.

15.     In or around April 2021, Ms. Orris began reporting to Tony Loukas Sr. Director of Retail and Restaurants and Mallory Susser, Director of Retail Operations.

16.      Ms. Susser explained in her first meeting with Ms. Orris that she wanted another employee, Chef Adams, to improve.

17.     Ms. Orris stated that she would help give Chef Adams' guidance.

18.     On or about May 10, 2021, when Ms. Orris first met Chef Adams and witnessed Ms. Susser's interactions with him, it was clear Ms. Susser treated him differently from other staff members.

      a.  Ms. Susser was verbally aggressive with Chef Adams.

      b.  Chef Adams identifies as Black, and Ms. Orris felt that Ms. Susser singled him out and treated him differently because of his race.

    c.   Ms. Orris was shocked at the way Ms. Susser treated Chef Adams.

    d.   After Ms. Susser left, Ms. Orris asked Chef Adams about Ms. Susser's treatment.

    e.   Chef Adams noted that Ms. Susser makes him feel that he is not a part of the team. He also stated that Ms. Susser would not allow him a key to his office, which directly interfered with his ability to do his job.

19.    After the May 10, 2021, meeting, Ms. Orris attempted to get a key for Chef Adams so he could access the office. However, Ms. Susser just laughed at her request.

20.    On or about May 24, 2021, Chef Adams informed Ms. Orris that Ms. Susser made him feel "like I'm dumb and I feel like she does it on purpose to make me feel small."

21.    On or about June 7, 2021, during a meeting with Ms. Susser, Ms. Orris discussed her ideas for helping Chef Adams. Ms. Susser responded: "James isn't a manager. He got promoted because he is Black." Ms. Susser also stated: "We had to meet diversity goals." Ms. Orris was shocked to hear blatant racism from her manager. Ms. Susser went on to say: "Tony was accused of having something against minorities, let's just say." Ms. Susser openly admitted that the department had issues with racism and continued to treat their only Black manager differently from other non-Black managers.

22.    On or about July 7, 2021, Ms. Orris engaged in protected activity by reporting to Mr. Loukas and Ms. Susser that Chef Adams did not feel supported in his role. Ms. Susser rolled her eyes and Mr. Loukas stated that Chef Adams was just sensitive.

23.    On or about July 16, 2021, Ms. Orris reached out to Mr. Loukas for a meeting with Chef Adams to discuss how Chef Adams was being treated. Mr. Loukas attempted to arrange a meeting after knowing Ms. Orris' had already left for the day.

24.    On or about July 17, 2021, Ms. Orris reached out to Quintin Eason, Vice President of Operations and Mr. Loukas' boss, to discuss racism against Chef Adams and the discriminatory treatment.

25.    On or about July 30, 2021, Ms. Orris reached out to Christine Smith, Director of Operations, to ask that she be included in the meeting.

26.    On or about August 1, 2021, Ms. Smith responded to Ms. Orris and set up a meeting for the following day.

27.    On or about August 2, 2021, Ms. Orris had a meeting with Ms. Smith. Ms. Orris explained to her that she felt Ms. Susser and Mr. Loukas discriminated against herself and Chef Adams.

      a.    Ms. Orris identifies as a lesbian and she felt treated differently because of this.

      b.    Ms. Orris explained that Chef Adams was treated differently because he is African American. Ms. Orris also told Ms. Smith that she was not supported in her role and neither was Chef Adams. Ms. Smith asked about Chef Adams coming forward. Ms. Orris explained that he was afraid to come forward because Ms. Susser had retaliated against him in the past.

      c.    At 10am, Mr. Eason and Chef Adams joined the meeting. In the meeting, Chef Adams stated that he felt misguided and uncomfortable with Ms. Susser.

28.    On or about August 5, 2021, both Mr. Loukas and Ms. Susser questioned Ms. Orris about her reports on August 2, 2021. It was clear that they had been informed of her engagement in protected activity.

29.    Throughout August 2021, Mr. Loukas and Ms. Susser treated Ms. Orris differently than her peers.

30.    Throughout August 2021, Mr. Loukas and Ms. Susser criticized Ms. Orris more and micromanaged her interactions. They also actively asked employees for complaints about Ms. Orris when they did not do so for other straight employees.

31.    In or around August 2021, Mr. Loukas made sexual remarks to Ms. Orris about her sexuality to make her uncomfortable.

32.    On or about August 27, 2021, Mr. Loukas asked Ms. Orris if she slept without clothes on. Ms. Orris did not respond as she was extremely uncomfortable. He then said, "Birthday suit?"

33.    Another time, Mr. Loukas saw a picture of Ms. Orris' girlfriend on her phone, and commented "Damn, you two look good." Ms. Orris was made very uncomfortable by the remark.

34.    In or around early September 2021, Ms. Orris was asked to work at Chartwell's Carnegie Mellon University campus food service location due to staffing issues.

35.    In or around September 2021, Orris specifically asked Mr. Eason if she could transfer to the Carnegie Mellon University location ("CMU"), and he agreed that Ms. Orris "would make a great fit here" and that he has "really enjoyed watching (Ms. Orris) growth." Chartwells had an open position at CMU, and it would be a promotion for Ms. Orris. Mr. Easton verbally approved of the transfer.

36.    In or around early September 2021, Ms. Orris asked to transfer from the University of Pittsburgh campus to the CMU campus get away from Ms. Susser and Mr. Loukas's retaliation for reporting them for gender and race discrimination.

37.     In or around September 10, 2021, Ms. Orris notified Molly Kurth, the now Division President, of her interest in taking the position and explained candidly that she wanted "out from underneath the umbrella of Tony and Mallory" due to the discrimination and retaliation.

38.     Ms. Kurth responded that she could see Ms. Orris working at CMU, and that Ms. Orris would be a good fit for a leadership role at the main dining hall.

39.     On or about September 10, 2021, Ms. Smith told Ms. Orris that she could not transfer to the CMU position without 60 to 90 days of consistent performance.

40.     Ms. Orris was shocked as she had never had any bad performance prior to this. Ms. Orris asked Ms. Smith why she would need this when she didn't have any bad performance.

41.     Ms. Smith then criticized Ms. Orris' posture for being too good, as a reason for blocking her position. Ms. Orris pressed Ms. Smith for an answer. Ms. Smith finally admitted that she did not know why and would have to call Mr. Loukas for more information.

42.     Ms. Smith then called Mr. Loukas to attend the meeting. Mr. Loukas told Ms. Orris that she was always in "defense mode" and needed to get better in her approach. But did not provide any objective criteria.

43.     On or about September 10, 2021, Mr. Loukas blocked Ms. Orris move to CMU campus in retaliation for reporting discrimination. Ms. Orris reported Mr. Loukas to Mr. Easton for blocking her from taking the new position. Mr. Easton said he would leave it up to Mr. Loukas because "it is important to trust their decision."

44.     On or about September 16, 2021, just days after Ms. Orris' reported Mr. Loukas for a second time, Ms. Orris was called into a meeting with Ms. Susser and Mr. Loukas. They informed Ms. Orris that they were pulling her from her unit, placing her back in The Eatery, and demoting her due to an unspecified investigation.

45.     On or about September 17, 2021, Ms. Orris reported the demotion and retaliation to Mr. Eason, and asked to be removed from Ms. Susser and Mr. Loukas' unit immediately.

46.     On or about September 17, 2021, Mr. Eason told Ms. Orris that she would receive further instruction soon.

47.     Later, on or about September 17, 2021, after Ms. Orris reported the demotion to Mr. Eason, Mr. Loukas and Ms. Susser issued Ms. Orris a final written warning. Ms. Orris had no previous write ups.

48.     Ms. Orris denied the allegations which contained many false accusations and issues that had never been addressed before.

49.     Mr. Loukas asked Ms. Orris, "You're not comfortable working with me?" well "either get comfortable working with me" and sign the document "or resign because there's nowhere else for you to go."

50.     By issuing Ms. Orris the final written warning, Mr. Loukas revoked Ms. Orris KPI bonus.

51.     On or about September 24, 2021, Ms. Orris reported the retaliation and harassment to Katrina Sturges, the Sr. Director of Residential Dining. Ms. Sturges told Ms. Orris to report the harassment, discrimination, and retaliation to Chartwells' ethics/human resources hotline.

52.     On or about September 24, 2021, Ms. Orris reported the harassment, discrimination, and retaliation to Chartwells' ethics hotline. The ethics hotline told Ms. Orris to report the harassment, discrimination, and retaliation to Mr. Eason. Ms. Orris had already reported the harassment, discrimination and retaliation to Mr. Eason multiple times.

53.     Mr. Eason did not investigate Ms. Orris' complaints of harassment, discrimination, and retaliation.

54.    On or about September 27, 2021, Ms. Orris emailed Mr. Eason again asking to be removed from Mr. Loukas and Ms. Susser's team due to the continuing harassment, retaliation, and discrimination.

55.    Mr. Eason did not respond to Ms. Orris's email sent on September 27, 2021.

56.    Chartwells constructively discharged Ms. Orris from her position.

57.    After Chartwells discharged Ms. Orris, in retaliation they provided false and defamatory information to Ms. Orris' next job resulting in the employer withdrawing their offer.

58.    The temporal proximity to Ms. Orris's discrimination complaints and retaliation serve as evidence of causation.

59.    Upon information and belief, Ms. Orris was replaced by a male.

60.    The discrimination and retaliation Ms. Orris suffered while working for Defendant affected her self-esteem and caused her severe emotional distress.

61.    The Defendant's extreme and outrageous conduct warrants the imposition of substantial compensatory damages and punitive damages.

## V.    CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF TITLE VII - Retaliation

62.    Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

63.    Plaintiff engaged in good faith protected activity by making multiple reports of unlawful acts.

64.    In retaliation, Defendant intentionally and willfully engaged in a series of unlawful acts against Plaintiff with respect to compensation, terms, conditions, or privileges of employment in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e) et seq.

65.    Defendant intentionally retaliated against Plaintiff for opposing Defendant's race and gender discrimination as evidenced by, among other things, Defendant's actions and comments, pattern and practice of antagonism, and the temporal proximity of the actions and comments to Plaintiff's failure to be promoted, failure to pay her a KPI bonus, retaliatory write up against Plaintiff, and ultimately Plaintiff's constructive discharge.

66.    By reason of Defendant's unlawful, willful, outrageous, and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

67.    Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT II – VIOLATION OF Title VII - Hostile Work Environment

68.    Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

69.     Defendant's conduct was severe and/or pervasive, was offensive to Ms. Orris, and would have been offensive to a reasonable person.

70.     By failing to prevent and/or correct the harassment toward Ms. Orris, Defendant created a hostile work environment because Ms. Orris reported discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

71.     Defendant's actions toward Ms. Orris were undertaken with malice and/or reckless indifference toward her federally-protected rights.

72.     As a direct and proximate result of Defendant's conduct, Ms. Orris has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

73.     By reason of Defendant's unlawful, willful, outrageous and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

74.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

**COUNT III – VIOLATION OF Title VII - Gender Discrimination**

75.     Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

76.     Defendant's conduct described above and herein constitutes gender discrimination and is a violation of Title VII.

77.     Defendant's discriminatory conduct was used as a basis for employment decisions affecting Plaintiff.

78.     The conduct described above and herein was unlawful gender discrimination committed by Defendant's employees, servants and/or agents who had the effective ability to

influence employment actions that could affect Plaintiff, including but not limited to demotion, reduction in wages and firing.

79.    As a direct and proximate result of Defendant's unlawful, willful, intentional discrimination against Plaintiff, Plaintiff incurred substantial losses, continuing in their nature, including but not limited to loss wages and loss of benefits, harm to her reputation, adverse effects on her career and diminished earning capacity.

80.    As a direct and proximate result of Defendant's unlawful, willful, and intentional discrimination and harassment against Plaintiff, Plaintiff suffered from emotion distress.

81.    By reason of Defendant's unlawful, willful, outrageous, and intentional misconduct towards Plaintiff, Plaintiff is entitled to recover both compensatory and punitive damages in addition to actual damages.

82.    Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.

### COUNT IV – VIOLATION OF Title VII - Constructive Discharge

83.    Plaintiff incorporates by reference the averments contained in all preceding paragraphs as if fully set forth herein.

84.    Defendant created a hostile work environment so intolerable that a reasonable employee would feel forced to resign, because of Ms. Orris' complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

85.    Defendant's actions toward Ms. Orris were undertaken with malice and/or reckless indifference toward her federally-protected rights.

86.    As a direct and proximate result of Defendant's conduct, Ms. Orris has suffered extreme emotional distress, lost wages, humiliation, inconvenience, and like injuries.

87.     Plaintiff has been directly harmed as a result of Defendant's violations as is fully set forth above.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court will:

(a) Assume jurisdiction herein;

(b) Declare Defendant's conduct to be unlawful and an intentional violation of Plaintiff's rights;

(c) Award Plaintiff wage loss damages, including back pay and front pay, damages associated with the increased tax burden of any award, and lost fringe and other benefits of employment;

(d) Award Plaintiff compensatory damages;

(e) Award Plaintiff punitive damages;

(f) Award Plaintiff pre and post-judgment interest;

(g) Award Plaintiff costs and attorneys' fees; and

(h) Grant such other relief as the Court deems just and appropriate.


Respectfully Submitted,

Rachel L. McElroy, Esq.
PA ID No. 321624

McElroy Law Firm, LLC
100 First Ave, #1010
Pittsburgh, PA 15222
Phone: 412-620-8735
rachel@mcelroylawfirm.com

Attorney for Plaintiff